_____ FILED   _____ LODGED
_____ RECEIVED _____ COPY

MAR - 5 1999

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

HECTOR B. VINDIOLA,              )
                                )
            Plaintiff,           )    CV 97-363 TUC RCC (RTT)
                                )
      vs.                        )    **REPORT AND RECOMMENDATION**
                                )
SOCIAL SECURITY COMMISSIONER,    )
                                )
            Defendant.           )
_____)

        Plaintiff filed this action for review of the final decision
of the Commissioner of Social Security pursuant to 42 U.S.C.
§ 405(g). This Social Security Appeal has been referred to the
Unites States Magistrate Judge pursuant to the Rules of Practice of
this Court. Plaintiff's October 14, 1998, filing will be treated as
a Motion for Summary Judgment. Defendant has filed a Cross-Motion
for Summary Judgment. For the following reasons, the Magistrate
Judge recommends that the District Court deny Plaintiff's Motion
for Summary Judgment and grant Defendant's Cross-Motion for Summary
Judgment.

1 

**PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act on February 10, 1994. (TR 57-58.) He alleged he became disabled on July 13, 1988. (TR 57.) The application was denied initially and on reconsideration. (TR 59-60A, 63-65.)

On January 5, 1995, Plaintiff, represented by counsel, appeared before an Administrative Law Judge ("ALJ"), who considered the case *de novo*. (TR 35, 33-55.) On September 22, 1995, the ALJ found that Plaintiff was not disabled. (TR 9-16.) This became the final decision when the Appeals Council approved it on April 16, 1997. (TR 2-3.)

**ISSUES:**

1) Is there substantial evidence to support the decision of the ALJ that Plaintiff, despite a medically severe combination of impairments, retains the residual functional capacity ("RFC") to perform the full range of light work and is therefore not disabled?

2) Is Plaintiff entitled to counsel in this action in U.S. District Court?

**STANDARD OF REVIEW**

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the Supplemental

2

Security Income ("SSI") program. 42 U.S.C. § 1382(a). To qualify for disability benefits under the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Penny v. Sullivan*, 2 F.3d 953, 956 (9ᵗʰ Cir. 1993). "A claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Id.*, *quoting Marcia v. Sullivan*, 900 F.2d 172, 174 (9ᵗʰ Cir. 1990); 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden to prove disability by showing that he or she cannot perform his or her previous occupation. *See Clem v. Sullivan*, 894 F.2d 328, 330 (9ᵗʰ Cir. 1990), *citing Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9ᵗʰ Cir. 1987). The burden then shifts to the Commissioner who must present substantial evidence to support a finding that claimant is not disabled. *Id.* at 330-332.

Pursuant to Title 42 U.S.C. § 405(g), the findings of the Commissioner are conclusive and the decision to deny benefits will

3

"be overturned only if it is not supported by substantial evidence or it is based on legal error." *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992), *citing Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). "Substantial evidence" is more than a mere scintilla, but less that a preponderance. *Id.* (citations omitted).

In evaluating the evidence, the reviewing court must look at the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *See Penny*, 2 F.3d at 956; *Matney*, 981 F.2d at 1019. The trier of fact, not the reviewing court, must resolve conflicts in the evidence, and "if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *See Matney*, 981 F.2d at 1019, *citing Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 1426-27, 28 L.Ed.2d 842 (1971).

The Social Security Act sets forth a five-step sequential process for the evaluation of a disability claim. 20 C.F.R. § 416.920. If it can be determined at any point in the review that a claimant is disabled or not disabled, that finding is made and the review is ended. *See Matney*, 981 F.2d at 1019; 20 C.F.R. § 416.920(a)-(f).

First, it must be determined whether the claimant is engaged

in "substantial gainful activity." If so, the claimant is not
disabled and benefits are denied. § 416.920(b). If the claimant is
not working, the next step is to determine whether the claimant has
a medically "severe" impairment or combination of impairments which
significantly limits claimant's physical or mental ability to do
basic work activities. § 416.920(c). If determined that claimant
does not have a severe impairment, the disability claim is denied.
If the impairment is severe, the next step is to determine whether
it is equivalent to one of the listed impairments that the
Secretary acknowledges are so severe as to preclude substantial
gainful activity. § 416.920(d); 20 C.F.R. Part 404, Subpart P,
Appendix 1.

A claimant's impairments must be considered in combination in
evaluating their effects. 20 C.F.R. § 416.923; *see Beecher v.
Heckler*, 756 F.2d 693, 694-695 (9th Cir. 1985). The cumulative
impact of all the impairments must be considered, whether or not
each impairment on its own would be of sufficient severity to
establish eligibility for benefits. 20 C.F.R. § 416.923. If the
impairment or combination of impairments meets or equals one or
more of the listed impairments, the claimant is presumed to be
disabled and no further inquiry is necessary. If the severe
impairment is not listed, the claimant is evaluated for "residual

5

functional capacity," or what the claimant can still do despite his limitations, to determine whether he can perform past relevant work. § 416.920(e). If the claimant has "residual functional capacity" to perform the work he has done in the past, he is not disabled and the claim is denied. If claimant cannot perform any work done in the past due to severe impairment, the fifth step considers whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience. § 416.920(f). The claimant is entitled to disability benefits only if he is not able to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987).

"When medical reports are inconclusive, 'questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner].'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted); *see also, Talifson v. Secretary of HHS*, 554 F.Supp. 575, 580 (D.Mont. 1982) (determinations of a claimant's credibility are to be made by the Commissioner through the ALJ). However, a finding that a claimant is less than credible must have some support in the record. *Talifson*, 554 F.Supp. at 580.

**DISCUSSION**

6

Applying the five-step analysis, the ALJ made the following

findings:

1.  The claimant has not engaged in substantial gainful activity since his current application date of February 10, 1994, through the date of this decision.

2.  The medical evidence establishes that the claimant has a medically severe combination of impairments as set forth in the text of this decision, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3.  To the extent the claimant alleged debilitating DM (diabetes mellitus), HTN (hypertension), dizziness, fainting episodes, pain or locking-up of the knees, numbness in his hands, stabbing back pain, symptoms, and functional limitations which would foreclose work within the RFC assessment set forth in Finding No. 4 below, his testimony was unconvincing and unpersuasive. (20 C.F.R. 416.928-929; SSR 88-13.)

4.  The claimant's medically severe impairments have reduced his residual functional capacity to light levels of work activity. (20 C.F.R. 416.945.)

5.  The claimant cannot resume any of his past relevant work.

6.  The claimant is 51 years old, which is defined as closely approaching advanced age. (20 C.F.R. 416.963.)

7.  The claimant has a twelfth grade education. (20 C.F.R. 416.964.)

8.  Based on an exertional capacity for light work, and the claimant's age, education and work experience, § 416.969 of Regulations No. 16 and Rule 202.13,

7

> Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

9. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 C.F.R. 416.920(f).)

### DECISION

It is the decision of the Administrative Law Judge that, based on the application filed February 10, 1994, the claimant is not eligible for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Social Security Act. (TR 15-16.)

## 1) IS THE ALJ'S DECISION THAT PLAINTIFF IS NOT DISABLED SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD?

Plaintiff claims that he is disabled due to back and leg pain, high blood pressure and diabetes. He testified that one night in 1988, he went home from work, and the pain just hit him in his back and knees and he couldn't move. (TR 39, 51.) He rested in bed for a couple of days until the pain subsided. (TR 40, 51.) He claims that he has trouble walking because of the pain. Sometimes he coughs, gets dizzy and passes out. (TR 40-41.) He also has pain in his knees, which sometimes lock up, and in his hands. (TR 41-42.) He has a constant stabbing pain in his lower back. (TR 43.) In addition to Ibuprofen for pain, he takes Procardia for hypertension and Glucotrol for diabetes. (TR 44-45, 52.) Plaintiff testified that on a typical day he is able to water the outside plants, clean

8

the yard, grocery shop, visit relatives, watch television and take short walks. (TR 46-48.) He can stand or sit for a few minutes, but then needs to move because of pain and stiffness. (TR 48-49, 54.) He can kneel or bend, and use his arms and feet to push or pull, but it is painful. (TR 49.) He can climb three steps and lift five or ten pounds. (Id.)

The ALJ agreed that the medical evidence shows that Plaintiff has a history of degenerative joint disease of the lumbar spine and an old injury to his left leg, as well as hypertension and diabetes mellitus, a combination of medically severe impairments. The early medical evidence shows Plaintiff was treated in April 1982 for obesity, hypertension and lower back strain after he played basketball for two hours. (TR 129.) He was treated in May 1982 for a sprained ankle, obesity, mild hypertension and lower back pain on palpation. (TR 126-127.) Plaintiff was seen for hypertension and obesity on February 7, 1983. (TR 117.)

Despite Plaintiffs's alleged onset of disability in 1988, the next evidence in the record that he was seen regarding back or leg pain or hypertension was in March of 1994, when Consultative Examiner Scott C. Forrer, M.D., evaluated Plaintiff for a disability determination for the Arizona Department of Economic Security ("DES"). (TR 102-104.) Dr. Forrer noted that Plaintiff

9

complained of many years of back pain, of increased intensity in the last year. (TR 102.) Plaintiff reported that he sustained back injuries and a broken left leg in motor vehicle accidents dating back to 1973 and 1974. There was no identified traumatic incident which caused the increased pain. Dr. Forrer noted Plaintiff's complaints of pain in the left leg and numbness from the knee down, occasional pain and numbness in the right leg, and increased intensity of discomfort walking. However, Plaintiff had not had X-rays taken in the previous 12 months, and was on no pain medication other than Extra-Strength Tylenol.

Upon examination, Dr. Forrer found that Plaintiff's chronic lower back pain was most likely attributable to degenerative disc disease in the lumbosacral spine. (TR 103.) There was no objective medical evidence of neurologic deficit and/or radiculopathy. There was no punch tenderness along the entire spine. Forward flexion was performed well to 90 degrees. The lumbar paraspinous and cervical musculature was supple, with no palpable tenderness present. Plaintiff could flex his chin to his chest without difficulty. (*Id.*)

Dr. Forrer noted that Plaintiff was using a cane as an assistive device, but did not appear of medical necessity. (TR 103.) Plaintiff walked with a limp favoring the right leg, but he could rise on his toes and walk on his heels, and tandem gait was

10

performed well. Strength in the upper and lower extremities was preserved with some giveway in the left hamstring and quadriceps. Straight leg raising in the supine position was tolerated to 90 degrees. Plaintiff's complaints of left leg pain occurred "without abnormal objective findings." (TR 103.) Dr. Forrer noted no impairment on bending, squatting, rising from a seated position to the examination table, dressing, or undressing. (TR 104.) Accordingly, Dr. Forrer found that Plaintiff is capable of performing work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking or traveling. (*Id.*) The ALJ relied heavily on Dr. Forrer's assessment.

In April 1994, H. E. Dresser, D.O., examined Plaintiff for a Disability Determination and Transmittal for the Social Security Administration ("SSA"). (TR 92-100.) Dr. Dresser found two exertional limitations: Plaintiff could only occasionally lift 50 pounds and frequently lift 25 pounds. Dr. Dresser found no other exertional, postural, manipulative, visual, communicative, or environmental limitations. He found that Plaintiff could walk on his toes and heels and tandem walk. There was no tenderness on the spine and Plaintiff could forward flex to 90 degrees. Dr. Dresser found no objective findings for pain or radiculopathy. (*Id.*)

On June 14, 1994, James E. Brady, M.D., affirmed the evidence

11

in the file and the assessment by Dr. Dresser, adding his signature
and the date to the previous assessment. (TR 100.)

From August 1994 to March 1996, the record contains evidence
of Plaintiff's numerous office visits to his treating physician
Heralio Serrano, M.D., at El Rio Health Center for treatment of
hypertension, diabetes and degenerative joint disease. The first
time Dr. Serrano saw Plaintiff was on August 5, 1994, about six
months after Plaintiff's initial application for Social Security
benefits was filed. (TR 111.) Dr. Serrano noted Plaintiff's
subjective complaints of hypertension that was not treated for
approximately ten years, numbness of the lower back and lower
extremities, and left knee pain. On examination, Dr. Serrano
diagnosed poorly-controlled hypertension (for which he prescribed
Procardia), degenerative joint disease, and numbness of the lower
extremities and back (for which he ordered X-rays of the lumbar
spine and left knee). (Id.) The X-ray of the knee showed minor
degenerative changes with soft tissue swelling consistent with
suprapatellar effusion. (TR 107.) The lumbosacral spine X-ray
showed minor degenerative changes with slight dextroscoliosis. The
alignment of the vertebral bodies was satisfactory and there was no
evidence of spondylosis or spondylolisthesis. (Id.)

On September 15, 1994, Plaintiff reported he had been doing

12

well at home, had no complaints and felt a lot better. (TR 109.)
Dr. Serrano first diagnosed diabetes on that visit. On September
29, 1994, Dr. Serrano noted that Plaintiff reported having pain in
the left knee since he fractured that leg years earlier. (TR 108.)
That day, however, Plaintiff reported that he had no lower back
pain. (Id.) On examination, the left knee showed no effusion and
Plaintiff had a good range of motion with no crepitus. (Id.) Dr.
Serrano prescribed 600 mg of Ibuprofen every 8 hours as needed.
Hypertension and diabetes were well-controlled with medication.

On November 11, 1994, Dr. Serrano reported that Plaintiff had
been doing well, but was still complaining of persistent pain in
the knees. (TR 181.) Dr. Serrano found the hypertension and
diabetes well-controlled and the degenerative joint disease ("DJD")
stable. (Id.)

G.D. Griesemer, D.O., examined Plaintiff for another DES
evaluation on December 5, 1994. (TR 143-44.) Dr. Griesemer found
that Plaintiff had hypertension, diabetes mellitus and multiple
degenerative arthritis. Without comment, Dr. Griesemer found that
Plaintiff had a mental or physical incapacity which prevented him
from performing any substantial gainful employment until June 15,
1995. (TR 144.) This is the only evidence in the record of a doctor
ever finding Plaintiff unable to work. Dr. Griesemer recommended

13

orthopedic, cardiology and internal medicine consults. (*Id.*)

On December 28, 1994, shortly before the hearing with the ALJ on January 5, 1995, Dr. Serrano talked to Plaintiff's attorney and discussed Plaintiff's case. (TR 159.) There is no statement in the record from Dr. Serrano regarding Plaintiff's physical ability or inability to work, nor did Dr. Serrano testify at Plaintiff's hearing. From that, it can be inferred that Dr. Serrano did not find Plaintiff unable to work.

Meanwhile, on December 29, 1994, Plaintiff's counsel submitted additional medical records to the ALJ, requesting that the ALJ keep the record open for Dr. Griesemer's outstanding report. (TR 105.) The report was received at the Office of Hearings and Appeals on January 4, 1995, the day before the hearing. (TR 143.) The ALJ inexplicably did not mention Dr. Griesemer's opinion that Plaintiff was unemployable for six months. However, since it was the greatly outweighed by the rest of the record and did not indicate Plaintiff was disabled for at least 12 months as required by the Act, it is reasonable that the single assessment of disability did not change the ALJ's ultimate conclusion that Plaintiff is not disabled.

On January 10, 1995, Dr. Serrano found Plaintiff's hypertension well-controlled, diabetes under fair control, and the reported coughing and passing out sufficiently worrisome to order

14

a cardiac consult. (TR 158.) DJD was not mentioned in the record. On January 26, 1995, cardiologist Monty Morales, M.D., found that the fainting was likely related to the coughing fits and did not have anything to do with any cardiac abnormality. (TR 172.)

On March 22, 1995, Dr. Serrano found that Plaintiff's diabetes was well-controlled, hypertension was fairly controlled, and DJD was stable. (TR 156.) Medications were refilled on June 21, 1995. (TR 155.) On September 18, 1995, Dr. Serrano found Plaintiff's diabetes and hypertension well-controlled with the current medications. (TR 154.) Plaintiff informed the doctor that he was doing a lot better. Dr. Serrano reported: "His arthritis is bothering him off and on, but nothing that he cannot control with the pain medications I gave him." (Id.) Plaintiff was continued on Ibuprofen and Tylenol.

On March 15, 1996, Plaintiff reported persistent back pain, off and on, worse when the weather is cold. (TR 153.) Dr. Serrano found the hypertension to be well-controlled and the diabetes poorly controlled; he increased the Glucotrol. Dr. Serrano continued Ibuprofen for the DJD. (Id.) These post-hearing records were considered by the Appeals Council, which found that they did not provide a basis for changing the ALJ's decision. (TR 2.)

We give "great deference to credibility determinations made by

15

administrative law judges." *Silver v. United States Postal Service*, 951 F.2d 1033, 1042 (9th Cir.1991).

> "... [A]s we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision."

*Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (internal citation omitted).

"An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking ..." *Id.* at 603. However, to reject claims of disabling pain, the ALJ is required to make specific findings to support his conclusion that Plaintiff's testimony was not credible to the extent alleged. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* (citation omitted).

By finding that Plaintiff retains residual functional capacity to perform the full range of light work, the ALJ said he accommodated Plaintiff's subjective complaints, impairments and

16

pain, and had given maximum credence to his testimony while reconciling it with the available medical evidence. (TR 13.) Dr. Forrer found no impairment on bending, squatting, rising from a seated position to the examining table, dressing or undressing, and no apparent impairment-related work limitations on sitting, standing, walking, lifting, carrying, handling, hearing, speaking or traveling. Dr. Dresser found no limitation whatsoever, except for limits of carrying only 25 pounds frequently or 50 pounds occasionally. Dr. Brady concurred. To the extent Plaintiff alleged greater exertional or nonexertional limitations than the record indicated, the ALJ found Plaintiff's testimony unconvincing.

Although there were moderate and minor degenerative changes to the left knee and lumbosacral spine, the ALJ stated that there was no other objective medical evidence pointing to the degree of disability Plaintiff claims. Although Plaintiff complained of multiple symptoms and described his physical capacity in severely compromised terms, Plaintiff was able to work in the yard, go grocery shopping, visit relatives, take short walks, and help take care of his elderly mother. The ALJ found that it was difficult to connect any specific medical impairment with Plaintiff's claimed restrictions, and his level of activity belied the assertion of debilitating symptoms. (TR 14.) The ALJ found Plaintiff's testimony

17

as it related to the nature, onset, duration, frequency and intensity of his pain, symptoms and functional limitations vague and uncertain. (*Id.*)

The record shows only conservative treatment for Plaintiff's subjective complaints of persistent pain. For example, the ALJ found that the pain medication Plaintiff takes is not the type or amount normally associated with a severe pain syndrome, and Plaintiff has not participated in acupuncture or biofeedback, or attended a pain clinic. (TR 14.) The ALJ also found that Plaintiff does not have the pathology of the spine which could reasonably account for his excess pain complaints. The ALJ found that the classical clinical signs of back pain such as muscle atrophy, abnormal gait, and persistently or significantly reduced range of lumbar motion, were not present. (TR 14.) In discrediting to some extent Plaintiff's allegations of excessive pain and other subjective symptoms, the ALJ's expressed reasons are sufficient to support the rejection and are supported by substantial medical evidence.

Plaintiff's diabetes and hypertension are essentially well-controlled with medication. Plaintiff's treating doctor has not reported a restricted capacity to work, although he has seen Plaintiff numerous times and was given ample opportunity to express

18

an opinion in Plaintiff's favor. The only examining doctor who considered Plaintiff unable to work saw him once, and limited the restriction to a six-month period. Although Plaintiff received medical treatment during the next year, there is no evidence that Plaintiff obtained a repeat diagnosis of unemployability, by any doctor.

There is substantial evidence in the record that Plaintiff suffers a combination of medically severe impairments, but as the ALJ found, Plaintiffs' impairments, even in combination, are not either listed or equal to those impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Based on substantial evidence in the record, including Plaintiff's own testimony regarding his activities of daily living and the observations of three out of four examining physicians, the ALJ did not err in finding that, despite his impairments, Plaintiff retains residual functional capacity to do at least some type of work. In fact, Plaintiff had even looked for work in the months preceding the hearing, signing up with an employment service and trying to do some yard work; unfortunately, Plaintiff found that he couldn't move fast enough to suit potential customers. (TR 54-55.)

Giving maximum credence to Plaintiff's testimony while trying to reconcile it with the available medical evidence, the ALJ found

19

that Plaintiff should appropriately be limited to performing light work. (TR 13.) Again viewing the evidence in the light most favorable to Plaintiff, the ALJ found that Plaintiff's past relevant work of building crates may slightly exceed the exertional requirements for light work. (TR 15.) Applying the medical vocational guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2, specifically Rule 202.13, based on Plaintiff's residual functional capacity, age, education and unskilled work history, a finding of not disabled is indicated.

**2) IS PLAINTIFF ENTITLED TO COUNSEL?**

Plaintiff asserts: "I believe that my right of paying social security and not being represented. Unfair to my constitution right (sic)." (Plaintiff's Memorandum.) Plaintiff cites *Brown v. Sullivan*, 771 F.Supp. 278, 279 (E.D.Wis. 1991). The Magistrate Judge construes the assertion as an argument that Plaintiff had a constitutional right to Court-appointed, free legal counsel on this appeal.

Plaintiff was represented by attorney Cheryl Blum of Southern Arizona Legal Aid at the hearing before the ALJ.(TR 24-26.) On appeal to the SSA Appeals Council, he was represented by attorney Philip Verrette of the law firm Tretschok, McNamara & Clymer. (TR 145-148.) On this appeal, Plaintiff is representing himself.

20

There is simply no constitutional right to be provided counsel in a civil action. The Sixth Amendment to the United States Constitution grants the right to assistance of counsel for a criminal defendant only: "In all criminal prosecutions the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. *Brown v. Sullivan* does not help Plaintiff. It refers to the issue of a claimant's right to proceed *in forma pauperis* in District Court, which only allows a plaintiff to make payments on the filing fee so as not to prohibit a person of low economic means from commencing an action. *In forma pauperis* status is not related to the appointment of counsel in a civil case.

There is no rule which prohibited Plaintiff from retaining counsel to represent him in this action. The fact that he was unable to find an attorney who would represent him does not violate his constitutional rights.

**CONCLUSION**

Considering the record as a whole, the ALJ's decision is based on proper legal standards and is supported by substantial evidence, as required by law. To the extent the ALJ rejected the degree of pain Plaintiff subjectively complains of, the ALJ made specific findings, which were supported by substantial evidence in the

21

record. Accordingly, the ALJ did not err by finding Plaintiff not disabled under the Social Security Act.

**RECOMMENDATION**

Based on the foregoing, **THE MAGISTRATE JUDGE RECOMMENDS** that the District Court, after its independent review of the record, **DENY** Plaintiff's October 14, 1998 filing, construed as a Motion for Summary Judgment, and **GRANT** Defendant's Cross-Motion for Summary Judgment filed December 1, 1998.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, further appeal is waived.

The Clerk is directed to mail a copy of this Report and Recommendation to the attorneys for Plaintiff and Defendant.

Dated this ___7___ day of March, 1999.


RAYMOND T. TERLIZZI
United States Magistrate Judge

22